IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

KEVIN HOWARD, )
)
    Plaintiff, )
)
  v. ) Civ. No. 01-376-SLR
)
ROBERT SNYDER, STAN TAYLOR, )
FRANCINE KOBUS, JOHN DOE#1, JOHN )
DOE #2, ANGELA LASKO, WAYNE MASSEY,)
DOREEN WILLIAMS, LESMA JONES, )
ELIZABETH BURRIS, CHARLES )
CUNNINGHAM, JOHN AND JANE DOE, AND )
PAUL HOWARD, )
)
    Defendants. )

---

Kevin Howard, Delaware Correctional Center, Smyrna, Delaware. Pro se Plaintiff.

Stuart B. Drowos, Esquire, of the Department of Justice, State of Delaware, Wilmington, Delaware. Counsel for Defendants.

---

**MEMORANDUM OPINION**

Dated: September 30, 2005
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

On June 6, 2001, Kevin Howard, a pro se plaintiff proceeding in forma pauperis ("plaintiff"), filed the present action pursuant to 42 U.S.C. § 1983, alleging First and Fourteenth Amendment violations by Robert Snyder, Stan Taylor, Francine Kobus, John Does #1 and #2, Angela Latsko, Wayne Massey, Doreen Wiliams, Lesma Jones, Elizabeth Burris, Charles Cunningham, John and Jane Doe, and Paul Howard (collectively, "defendants").[1] (D.I. 2) Plaintiff is, and has been at all times relevant to this claim, incarcerated at the Delaware Correctional Center ("DCC") in Smyrna, Delaware. (D.I. 69 at 2) Plaintiff claims that prison officials improperly confiscated and destroyed his legal materials, "thereby denying [him] access to the courts, and [] hindering, interfering, obstructing, and impeding [his] access to the courts." (Id. at 1) Plaintiff requests compensatory damages, declaratory and prospective injunctive relief, and "any other relief that the [c]ourt deems appropriate." (Id. at 19) The court has jurisdiction over the present suit pursuant to 28 U.S.C § 1331. Presently before the court is defendants' motion

---

[1] At the time of plaintiff's complaint, Stanley Taylor, Paul Howard, Robert Snyder, Elizabeth Burris, Charles Cunningham, Francine Kobus, Doreen Williams, Lesma Jones, Wayne Massey, Angela Latsko, John Does #1 and #2, and John and Jane Doe were all "correction officers or officials" employed at either the Delaware Correctional Center or the Delaware Department of Correction. (D.I. 69 at 2)

for summary judgment.[2] For the reasons that follow, said motion shall be granted.

## II. BACKGROUND

During a "shakedown" on April 28, 1999, correctional officers searched plaintiff's cell and found three boxes of materials that belonged to him. (D.I. 69 at ¶ 21) Under DCC rules, inmates are only allowed two boxes of materials, absent prior written authorization for an additional box. Plaintiff had obtained such authorization, but the authorization had expired in January 1999. Consequently, prison officials confiscated the third box and its contents as contraband. (D.I. 121 at ¶ 5) That same day, plaintiff wrote a letter to defendant Elizabeth Burris, the Deputy Warden of DCC, requesting renewed authorization for a third box as well as the return of his confiscated legal materials, because he was working on an appeal of his criminal conviction. (Id., ex. A-6) After inquiring into the veracity of plaintiff's assertions, defendant Burris granted plaintiff's request for an additional box on June 10, 1999.

---

[2] By memorandum opinion and order dated June 14, 2004, the court granted defendants' motion for summary judgment. (D.I. 146, 147) Plaintiff moved to vacate, arguing that he had not been given the opportunity to oppose the motion for summary judgment. (D.I. 151) On January 3, 2005, the court granted plaintiff the opportunity to respond to defendants' motion for summary judgment and stated it would review the June 14, 2004 decision after considering any additional papers filed by the parties. (D.I. 158) Accordingly, this opinion represents the court's decision in light of the parties' submissions.

2

(Id., ex. A-11)  At a disciplinary hearing held July 28, 1999, plaintiff pled guilty to possession of non-dangerous contraband and was penalized for such by the loss of privileges for five days.  (Id., ex. A-14)  Plaintiff did not appeal this decision. (Id.)

On August 5, 1999, plaintiff was given the opportunity to view the materials confiscated during the April 28, 1999 shakedown.  (Id., ex. A-15)  While he concedes that a portion of the materials were returned to him, plaintiff alleges that his trial transcript was missing.  (Id.)  Consequently, prison officials removed the property in order to have it inventoried. (Id.)  Later that day, plaintiff's legal materials were returned.[3]  Apparently dissatisfied, plaintiff filed a grievance on August 26, 1999, requesting that the missing materials be replaced or, if they had been destroyed, that he be given "an avenue to regain the equivalent information."  (Id.)

On July 26, 2000, defendant Burris denied plaintiff's grievance on the grounds that "[i]tems allegedly lost were taken as excessive and confiscated as contraband.  This was a disciplinary matter and is not grievable."  (Id.)  On August 1, 2000, plaintiff appealed defendant Burris's decision to the

---

[3]Plaintiff alleges that his trial transcript was missing; however, on this record, it is unclear what, if any items, were missing.  Further, it has not been demonstrated that these "missing" items actually prevented him from prosecuting any of his cases.

3

Bureau Grievance Officer ("BGO"). On August 17, 2000, the BGO denied the appeal, finding that because plaintiff's authorization for a third box had expired in January of 1999, the confiscation was proper. (Id., ex. A-18) Additionally, no record as to the contents of the third box was submitted. Consequently, the BGO had "no definitive proof that a trial transcript was in the box [and] confiscated." Accordingly, the BGO concluded that "there is no further issue to mediate nor [o]utside [r]eview necessary." (Id.)

### III. STANDARD OF REVIEW

Because defendants have referred to matters outside the pleadings, defendants' motion to dismiss shall be treated as a motion for summary judgment and disposed of as provided in Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact is in dispute. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a

rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995)(internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. There must be enough evidence to enable a jury to reasonable find for the nonmoving party on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In other words, the court must grant summary judgment if the party responding to the motion fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. Omnipoint

Comm. Enters., L.P. v. Newtown Township, 219 F.3d 240, 242 (3d Cir. 2000) (quoting Celotex, 477 U.S. at 323).

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

## IV. DISCUSSION

Plaintiff alleges that prison officials improperly confiscated and partially destroyed a box of legal materials from his cell despite their having been made aware of his filing deadline in the Delaware Supreme Court. (D.I. 159 at ¶ 4) While he concedes the validity of the regulation which requires a prisoner to have written permission to maintain more than two boxes in his cell at one time (the "two box per inmate" regulation)(id. at ¶ 5), he contests the practice which prevented him from accessing the confiscated legal materials after defendants were made aware of the date by which he had to file his appellate brief. As a result, plaintiff contends that his ability to litigate the pending appeal, as well as other claims he planned on pursuing, was hindered, in violation of his First and Fourteenth Amendment right of access to the courts. (Id. at ¶ 2) In support of these arguments, plaintiff attaches: (1) the affidavits of two inmates who assisted plaintiff with his legal work; (2) his own affidavit; and (3) correspondence from the Delaware State Court and his attorneys.

Defendants have moved for summary judgment on plaintiff's denial of access claim. They argue that, not only was the

6

seizure of plaintiff's excess materials justified under the "two box per inmate" regulation, plaintiff failed to utilize the alternative means of access available to him under departmental policy. (D.I. 121, ¶ 11; 160)  Moreover, defendants assert that plaintiff's supporting documents, i.e., the affidavits and letters, fail to demonstrate any genuine issue of material fact that would preclude summary judgment.

The Supreme Court has declared that "prison walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner v. Safley, 482 U.S. 78, 84 (1987).  See also Wolff v. McDonnell, 418 U.S. 539, 555-56 (1974)("There is no iron curtain drawn between the Constitution and the prisons of this country").  Consequently, the Supreme Court has recognized that persons convicted of serious crimes and confined to penal institutions retain numerous rights, including the right of meaningful access to the courts.  Bounds v. Smith, 430 U.S. 817 (1977).  Such access effectively "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828.  Nevertheless, the Supreme Court has also recognized that the rights of prisoners "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." Thornburgh v. Abbott, 490 U.S. 401, 407 (1989)

7

(quoting Turner, 482 U.S. at 85). Prison officials must weigh the need for internal order and security against the rights of prisoners. Thus, courts have been called upon to review the balance struck by prison officials between the penal institution's need to maintain security within its walls and the rights of prisoners.

According to the Court in Turner v. Safley, in cases involving plaintiffs who claim that their civil rights were violated by prison regulations, the proper standard of review is "whether a prison regulation that burdens fundamental rights is 'reasonably related' to legitimate penological objectives, or whether it represents an 'exaggerated response' to those concerns." Turner, 482 U.S. at 87. The Court then stated that "several factors are relevant in determining the reasonableness of the regulation at issue." Id. at 89. First, courts may consider whether a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it" exists. Id. at 88 (quoting Block v. Rutherford, 468 U.S. 576, 586 (1984)). Regulations cannot be upheld, however, "where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational. Moreover, the governmental objective must be a legitimate and neutral one." Id. at 89-90. Second, courts may evaluate "whether there are alternative means

of exercising the rights that remain open to prison inmates."
Id. at 90.  "Where 'other avenues' remain available for the
exercise of the asserted right, courts should be particularly
conscious of the 'measure of judicial deference owed to
corrections officials. . . in gauging the validity of the
regulation.'"  Id. (quoting Pell v. Procunier, 417 U.S. 817, 827
(1974))(citation omitted).  Third, courts may look at

> the impact accommodation of the asserted constitutional
> right will have on guards and other inmates, and on the
> allocation of prison resources generally . . . .  When
> accommodation of an asserted right will have a
> significant "ripple effect" on fellow inmates or on
> prison staff, courts should be particularly deferential
> to the informed discretion of corrections officials.

Id. (citation omitted).  In other words, courts must weigh the
potential side effects the prison may suffer if the prisoner's
claim that his rights are being violated is upheld.  Lastly, "the
absence of ready alternatives [to regulation] is evidence of
[its] reasonableness."  Id. (citing Block, 468 U.S. at 587).

Applying this framework to the issue at bar, the court
concludes that the "two box per inmate" regulation which permits
prison officials to confiscate excess property beyond the
authorized amount - even after being made aware of a filing
deadline - "is 'reasonably related' to legitimate penological
objectives."  Id. at 87.  Focusing on the first factor identified
in Turner, the court finds no genuine issue of material fact
concerning the connection  between the regulation and the

9

government interests advanced. Prison officials at DCC have identified several legitimate objectives served by the "two boxes per inmate" regulation which exist regardless of whether there is a filing deadline or not. These include maintaining clutter free cells, ensuring adequate living space within the cell, and reducing fire and safety hazards. (D.I. 121 at ¶ 10) Moreover, boxes kept in cells offer hiding places for contraband, which in turn poses additional security risks for the institution as a whole. (Id.) Consequently, approval for excess materials is absolutely vital to the safety of both inmates and officials alike. The court, therefore, finds that there is a rational connection between confiscating unapproved excess materials and the interest in running a safe and secure institution. Accordingly, the first factor described in Turner weighs in favor of finding the "two box per inmate" regulation to be reasonable.

With respect to the second Turner factor, the court finds no genuine issue of material fact as to whether any alternatives existed by which the plaintiff could exercise his right to access the courts, simply because a number of avenues have been available to him at all times. First and foremost, plaintiff acknowledges that, at all times relevant to this action, he has consistently been provided access to the DCC law library on an average of three days a week, and an hour and a half to two hours on each occasion. (Id., ex. C1 at 20, 24) Likewise, each time

he has attended the library, members of the DCC staff have assisted him in finding books and answering legal questions. (Id., ex. C2 at 8, 10, 15)  Such assistance by the DCC in providing plaintiff with both an adequate law library and legal assistance places the defendants in accord with Bounds, regardless of any confiscation that took place.  Secondly, plaintiff acknowledges that inmates may possess a third box for storage of legal materials if they obtain prior written permission.  (Id., ex. C5 at 17)  Plaintiff, himself, utilized this procedure prior to the events in question, as evidenced by the approval for a third box that expired on January 13, 1999. (Id., ex. A2 at ¶ 4; ex. C6 at 5).  Immediately thereafter, he used the same procedure to renew authorization for a third box of materials.  (Id., ex. A6-7)  Defendant Burris granted his request for a third box on June 10, 1999 (id., ex. A11), and plaintiff's legal materials were subsequently returned to him on August 5, 1999, despite the policy that withholds confiscated items from inmates found guilty of disciplinary infractions.  (D.I. 87 at ¶ 5)  Such events demonstrate that, at all times, plaintiff has known how to utilize the DCC rules and gain approval to retain a third box of legal materials in his cell.  Consequently, plaintiff failed - at the time of the April 28, 1999 confiscation - to exercise the "alternative means" made available to him by the prison administration.  (Id., ex. C14-15)  Finally, the

11

record demonstrates that "[d]epartmental policy makes reasonable provisions for inmates to retain, retrieve and/or exchange permitted (non-contraband or excess) documents to ensure that inmates have current pleadings and papers necessary to conduct business with the courts in pending cases." (Id., ex. D2 at ¶ 6) Therefore, even if plaintiff failed - as he did in this case - to obtain prior written permission for a third box, he had another avenue by which to access these legal materials. In this regard, defendant Burris stated that "[plaintiff] was afforded the opportunity to keep the legal materials of his choice when the items were originally confiscated." (D.I. 94 at ¶ 5) While plaintiff argues to the contrary, he has presented no evidence indicating that he made any attempts to exchange permitted legal materials. Consequently, the record demonstrates that plaintiff failed to utilize another alternative by which he could exercise his rights of access to the court. The second factor espoused in Turner weighs in favor of finding the regulation and subsequent confiscation reasonable.

The third factor established by Turner requires courts to consider the possible effects of obliging the prisoner's request, to wit, the impact that the prison's accommodation of plaintiff's asserted right of access to the courts would have on correctional officers and other inmates. If plaintiff were allowed to possess a third box of legal materials without permission, claiming an

12

upcoming filing deadline as the reason, a significant ripple effect could result. Other prisoners would likely seek to keep more than two boxes in their cell, ignoring the other available avenues while citing the leniency afforded to plaintiff as precedent. This would be highly detrimental to the penological goals served by the "two box per inmate" regulation. Additionally, allowing prisoners to keep more than two boxes in their cells as a result of a court deadline would make it markedly easier for prisoners to hide contraband, including weapons, which would jeopardize the safety of both correctional officers and other inmates. Likewise, inmates' cells would become more cluttered, creating a fire hazard and increasing the possibility that prisoners could use the excess boxes to block the doors of their cells. In light of these concerns, the court gives deference to the "informed discretion of corrections officials" at DCC, Turner, 482 U.S. at 90, and concludes that the third factor tips in favor of a finding of reasonableness.

As to the final Turner factor, "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at a *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." Id. at 91. In the present case, no genuine issue of material fact exists with respect to this factor. While plaintiff suggests that the DCC

13

should "make reasonable provisions for plaintiff to exchange documents out of the confiscated legal material" (D.I. 159 at ¶ 9), his alternative already exists and was in use at the time of the incidents giving rise to this lawsuit. (D.I. 121, ex. D2 at ¶ 6) Accordingly, the court concludes that the fourth factor weighs in favor of finding that the regulation is reasonable.

In sum, pursuant to the factors set forth in <u>Turner v. Safley</u>, the court finds that the "two box per inmate" regulation which permits prison officials to confiscate excess property beyond the authorized amount - even after being made aware of a filing deadline - is reasonably related to valid correctional goals, especially in light of the alternative means of access available to inmates under the DCC rules. The DCC rules are content neutral, and logically advance the goals of institutional security and safety. Likewise, the rules are not an exaggerated response to those objectives. Consequently, the court cannot conclude that plaintiff's First and Fourteenth Amendment rights have been violated. As such, the court grants defendants' motion for summary judgment.

## V. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted. An appropriate order shall issue.